**FAJARDO SUGAR GROWERS ASSOCIATION, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

United States District Court
S. D. New York.
Nov. 26, 1957.

On Motion to Amend Findings
May 5, 1958.

Irving Jay Greenspan, for plaintiff.

Paul W. Williams, New York City, for defendant (Elliot L. Hoffman, New York City, of counsel).

THOMAS F. MURPHY, District Judge.

■ This is an action to recover excise taxes assessed against plaintiff under the Sugar Act of 1937 (7 U.S.C.A. §§ 1100–1183; 26 U.S.C. § 3490 et seq. (1940 ed.)) on sugar manufactured by plaintiff and sold between February and October, 1939.

The Sugar Act of 1937 imposed a tax upon sugar manufactured after September 1, 1937, which was sold for direct consumption. Sugar sold for further refining as distinguished from direct consumption was not subject to tax.

The relevant sections are:

"§ 3490. Tax

"(a) Rate. Upon manufactured sugar manufactured in the United States, there shall be levied, collected and paid a tax, to be paid by the manufacturer at the following rates:

"(1) On all manufactured sugar testing by the polariscope ninety-two sugar degrees, 0.465 cent per pound, and for each additional sugar degree shown by the polariscopic test, 0.00875 cent per pound additional, and fractions of a degree in proportion;

"(2) On all manufactured sugar testing by the polariscope less than ninety-two sugar degrees, 0.5144 cent per pound of the total sugars therein.

"(b) Exemption. No tax shall be required to be paid upon the manufacture of manufactured sugar by, or for, the producer of the sugar beets or sugarcane from which such manufactured sugar was derived, for consumption by the producer's

own family, employees, or household."

"§ 3491. Returns and payment of tax

"(a) Returns. The manufacturer shall file on the last day of each month a return and pay the tax with respect to manufactured sugar, (1) which has been sold, or used in the production of other articles, by the manufacturer during the preceding month (if the tax has not already been paid) and (2) which has not been so sold or used within twelve months ending during the preceding calendar month, after it was manufactured (if the tax has not already been paid).

"For the purpose of determining whether sugar has been sold or used within twelve months after it was manufactured sugar shall be considered to have been sold or used in the order in which it was manufactured."

"§ 3507. Definitions * * *

"(b) Manufactured sugar. The term 'manufactured sugar' means any sugar derived from sugar beets or sugarcane, which is not to be, and which shall not be, further refined or otherwise improved in quality; except sugar in liquid form which contains nonsugar solids (excluding any foreign substance that may have been added * * *) equal to more than 6 per centum of the total soluble solids, and except also sirup of cane juice produced from sugar cane grown in continental United States.

"The grades or types of sugar within the meaning of this definition shall include, but shall not be limited to, granulated sugar, lump sugar; cube sugar, powdered sugar, sugar in the form of blocks, cones, or molded shapes, confectioners' sugar, washed sugar, centrifugal sugar, clarified sugar, turbinado sugar, plantation white sugar, muscovado sugar, refiners' soft sugar, invert sugar mush, raw sugar, sirups, molasses, and sugar mixtures.

"(c) Total sugars. The term 'total sugars' means the total amount of the sucrose (Clerget) and of the reducing or invert sugars. The total sugars contained in any grade or type of manufactured sugar shall be ascertained in the manner prescribed in paragraphs 758, 759, 762, and 763 of the United States Customs Regulations (1931 edition)."

Plaintiff, a New York joint stock association, owned sugar fields in Puerto Rico and was closely affiliated with two other Puerto Rican corporations, Fajardo Sugar Company and Loiza Sugar Company. Pursuant to contract it delivered its sugar cane to the mills operated by FSC and LSC. When the sugar was processed plaintiff received credit for the amount of sugar so produced.

On September 1, 1937, when the Sugar Act came into being, plaintiff had 14 million lbs. of sugar to its credit and some 7 million lbs. earmarked, according to its excise returns, for local sales in Puerto Rico. It has been stipulated that on March 31, 1938, plaintiff had no 1937 sugar in the warehouse of FSC and on February 1, 1939, it had no 1937 sugar in the warehouse of LSC. For reasons of its own (probably to prevent spoilage) plaintiff sold 14 million odd lbs. of its 1937 sugar to refineries in the United States. This did not mean that the warehouses were thus emptied, for the 1938 crop was taking its place. Plaintiff, however, by bookkeeping entries maintained an inventory credit of some 7 million lbs., calling it 1937 sugar, and the entries would have it appear that the non-taxable sales to refineries were of the 1938 crop of sugar. In short, plaintiff by bookkeeping entries utilized a LIFO system of accounting.

Accordingly, starting in February 1939 when it filed its monthly tax returns, plaintiff reported local consumption sales but claimed they were tax exempt because the sugar sold was 1937 sugar as this fact appeared in its books

of account. The Commissioner determined that the 1937 sugar had been previously exhausted and accordingly made the assessments complained of in sums totaling $37,134.95. Plaintiff paid the tax in four separate payments and filed four separate claims for refund in 1940. These claims, identical except as to amounts and dates, were rejected by the Commissioner by May 10, 1940. No suit was commenced during the following two years. Cf. 26 U.S.C. § 3772(2). However, on November 17, 1943, plaintiff filed a single refund claim for $37,134.95 with the Commissioner and in its enclosure letter referred to a detailed schedule "to be submitted." On January 20, 1944, the Commissioner rejected the claim on the ground that it duplicated the prior claims. On January 25, 1944, plaintiff's counsel mailed to the Commissioner certain schedules. On January 8, 1946, the instant suit was started.

Although a serious question of jurisdiction is presented because of the tardiness of plaintiff's suit the merits will be first discussed.

The government's position is rather simply stated. It argues that since plaintiff had in fact no 1937 sugar to sell, what it sold in 1939 had to be taxable sugar.

Plaintiff's argument is: Sugar manufactured prior to September 1, 1937, was not subject to tax no matter when it was sold. Thus it was possible to create a non-taxable inventory credit against which could be charged sales of sugar that was manufactured even after this date, or, in other words that the statute permitted a LIFO method of accounting.

We find no support for plaintiff's theory either in the statute or in reason. The statute is significantly silent on any such practice. However, some light is shed on the opposite practice for the last paragraph of § 3491 reads: "For the purpose of determining whether sugar has been sold or used within twelve months after it was manufactured sugar shall be considered to have been sold or used in the order in which it was manufactured." This, of course, would authorize a FIFO method.

Reason would seem to dictate a FIFO method because of the deterioration and fungibility of sugar itself and the impossibility of the taxpayer tagging or tracing his sugar. Moreover, if it were otherwise the taxpayer would be permitted to complete tax-free transactions at almost any time depending on his own whim or convenience.

Since the tax was validly assessed the complaint must be dismissed on the merits.

It should be dismissed, too, because of lack of jurisdiction.

■ The four claims for refund filed in 1940 refer to a letter of March 11, 1939, setting forth the reasons why the refund should be had. It advanced these arguments: (1) That since the taxpayer had a tax-free inventory on hand as of September 1, 1937, and since it is a local practice to borrow sugar, when it liquidates this inventory it will be a tax-free transaction; (2) That even if the amount of sugar borrowed were subtracted from the amount of tax-free inventory there still remained an amount in excess of the sales made (and taxed during other taxable periods), and (3) That the taxpayer would waive its claim with respect to the amount of sugar borrowed if the Commissioner would acknowledge and confirm that the balance, after having subtracted the borrowed sugars, of the inventory carried as manufactured sugar on September 1, 1937, was tax-exempt if and when sold for local consumption in Puerto Rico. All of these claims were rejected by May 10, 1940. In 1943 when the claim for the total amount was again filed the same arguments were advanced. In addition the taxpayer also argued that the tax was imposed or assessed because of the failure of the taxpayer to submit actual, physical disposition data, and promised to submit such data. It also argues that the Treasury erroneously used a FIFO method because it lacked adequate information and that the Treas-

ury found the 1937 sugar exhausted much earlier than it actually was.

These arguments do not change the substance of the claim and were merely a repetition of the previously rejected claim. Even the schedules which were submitted after the second claim was rejected merely show how the three different companies allocated the sugar to their various inventory accounts.

As Judge Coxe said in his opinion in D.C., 76 F.Supp. 377, 378, on defendant's motion for summary judgment, "The filing of a second claim based on the same grounds * * * covered by the first claim, and already disallowed, will not operate to allow a suit to be brought within two years after the rejection of the second claim; suit must still be brought within two years after the rejection of the first claim."

Accordingly, since the 1943 claim was merely a duplicate of the 1940 claims this action must be dismissed, not having begun within two years after the rejection of the prior claims.

Judgment accordingly.

### On Motion to Amend Findings

On plaintiff's motion under Rule 52(b), Fed.Rules Civ.Proc. 28 U.S.C.A. our memorandum of November 26, 1957, is adhered to with the following amendments:

▇ Objection to the tax on the grounds that plaintiff is not a manufacturer or that the sugar is not manufactured sugar is now precluded since neither of these grounds was urged in opposition to the tax in the refund claims plaintiff presented to the Commissioner, nor in the complaint in this action.

Our finding that plaintiff sold 14 million pounds of its 1937 sugar is amended to the extent that we now find that plaintiff sold seven million pounds of its 1937 sugar and that the remaining seven million pounds were sold by the Fajardo and Loiza companies with plaintiff's knowledge and consent. Under these facts plaintiff still is not entitled to re-cover. Since the statute taxed sugar manufactured after September 1, 1937, plaintiff should have noted on its books the "loan" of its seven million pounds of 1937 sugar so as to record properly the disposition of that sugar. Failure to so note this transaction in effect led plaintiff to deal with its sugars in a LIFO manner and refer to the taxed sales as sales of 1937 sugar when in fact, as per its stipulation, the sales were of sugar manufactured after 1937.

Plaintiff's motion for a new trial is denied.

These are orders. No settlements are necessary.