Ned **MILLER** and Frances Miller,
Plaintiffs-Appellants,

v.

The **UNITED STATES** of America,
Defendant-Appellee.

No. 911, Docket 73-2756.

United States Court of Appeals,
Second Circuit.

Argued May 22, 1974.

Decided July 11, 1974.

Leonard Feldman, New York City
(Frederick & Goglio, Mineola, N. Y.),
for plaintiffs-appellants.

Carolyn R. Just, Atty., Tax Div., Dept. of Justice (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Bennet N. Hollander, Attys., Tax Div., Dept. of Justice, Washington, D. C., and Robert Morse, U. S. Atty., E.D.N.Y., of counsel), for defendant-appellee.

Before SMITH and TIMBERS, Circuit Judges, and TYLER,* District Judge.

J. JOSEPH SMITH, Circuit Judge:

This is an appeal from an order of the United States District Court for the Eastern District of New York, Mark A. Costantino, *Judge,* dismissing taxpayers' refund action on the grounds that the statute of limitations had expired. 365 F.Supp. 383 (1973). Because we agree with the taxpayers that the Commissioner is precluded from pleading the statute of limitations because he inadvertently led them to believe that their filing deadline had been extended, we reverse.

The relevant facts are unusual, but not unique. Taxpayers are husband and wife who elected to pay a contested deficiency of almost $38,000 and then seek a refund from the Commissioner or the courts. Following a timely claim, the Service—according to normal practice—requested that the taxpayers waive a formal notice of disallowance. As the waiver form—known in the trade as Form 2297—clearly indicates, the effect of such an irrevocable waiver is to commence the two-year statute of limitations on refund actions.[1] 26 U.S.C. § 6532(a)(3).

Taxpayers apparently executed this form, for the Service's files contain a letter from taxpayers' attorneys dated November 7, 1966, which states:

In re: Ned and Frances Miller
Claim for Refund—Year 1957

Gentlemen: Enclosed herein please find Form 2297, waiver of statutory notification of claim disallowance, executed by the above named clients.

We must say "apparently" because the Service has since misplaced the form. It is therefore forced to rely on the cover letter and consistent notations in its files to prove that the formal notice was waived.

■ Based on this circumstantial evidence the district court found that the waiver form had in fact been executed. While we recognize that the Commissioner has the burden of proving the affirmative defense of the statute of limitations, Fed.R.Civ.P. 8(c), and that here that burden is increased by his failure to produce the waiver form, we cannot say that the district court was "clearly erroneous" in reasoning that the cover letter must have been accompanied by the form.[2] *See,* Daniel v. United States, 454 F.2d 1166, 1167 (6th Cir.), cert. denied, 409 U.S. 843, 93 S.Ct. 42, 34 L.Ed. 2d 82 (1972); United States v. Ross, 368 F.2d 455, 457 (2d Cir. 1966).

Assuming then that the waiver was executed on or before November 7, 1966, the filing deadline for a timely claim would have been November 7, 1968. However the higher echelons in the Service apparently overlooked the cover letter and docket entries—the form presumably having been misplaced—for on May 20, 1968 the Service sent the taxpayers the very disallowance notice they had waived eighteen months before. That notice—which was but a form letter—was faithful to a *different* subsection of the statute of limitations in ad-

---

* Of the Southern District of New York, sitting by designation.

1. 26 U.S.C. § 6532(a)(3):
   *Waiver of notice of disallowance.*—If any person files a written waiver of the requirement that he be mailed a notice of disallowance, the 2-year period . . . shall begin on the date such waiver is filed.

2. We might well hold differently if the only evidence of the waiver were the Service's internal notes, *or* if the precise terms of the waiver had to be proven. Here, however, the critical evidence is the cover letter from the taxpayers' attorneys, and there is no suggestion that the Form 2297 therein conveyed was anything other than the standard form which we can judicially notice.

vising the taxpayers that they had two years *from the date of the notice* to file their refund action.[3] 26 U.S.C. § 6532(a)(1).

Thus the unnecessary disallowance notice apparently extended the filing deadline from November 7, 1968—as calculated according to the waiver form—to May 20, 1970. The taxpayers filed this action on June 20, 1969—seven months *after* the original deadline, but eleven months *before* the new one.

█ The Commissioner, in arguing that the unnecessary disallowance notice should be disregarded, stresses the general rule that a statute authorizing an action against the government must be strictly construed as a waiver of sovereign immunity. United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); Minnesota v. United States, 305 U.S. 382, 388, 59 S.Ct. 292, 83 L.Ed. 235 (1939); Hammond-Knowlton v. United States, 121 F.2d 192, 201–202 (2d Cir.), cert. denied, 314 U.S. 694, 62 S.Ct. 410, 86 L.Ed. 555 (1941). *But see,* Panella v. United States, 216 F.2d 622, 624 n. 3 (2d Cir. 1954) where then Judge Harlan noted that in the absence of specific congressional intent, the courts have vacillated between strict and liberal constructions of such statutes.

These cases, however, deal with the *substantive* nature of the authorization, and here there is no doubt that the taxpayers' refund action is authorized. 26 U.S.C. § 7422. Nor is this case controlled by United States v. Michel, 282 U.S. 656, 658–660, 51 S.Ct. 284, 75 L.Ed. 598 (1931), where the Court held that the statute of limitations on tax actions must similarly be narrowly construed. *See also,* Gallion v. United States, 389 F.2d 522, 523–524 (5th Cir. 1968) (citing numerous cases involving strict application of the statute); Wallace v. United States, 142 F.2d 240, 242–243 (2d Cir.), cert. denied, 323 U.S. 712, 65 S.Ct. 37, 89 L.Ed. 573 (1944) (reluctantly following this "niggardly rule"). Here the problem is not that there is one ambiguous statute that must be construed, but rather that there are two unambiguous subsections that appear to be equally controlling. That is, if we focus on the fact that the waiver was executed, § 6532(a)(3) clearly requires that the taxpayers' action be dismissed. *But* if we focus on the equally undeniable fact that the Commissioner sent the taxpayers a formal disallowance notice, the more general rule of § 6532(a)(1) applies and their action is timely.

The point, of course, is that these two subsections were intended to be mutually exclusive: And in the normal course of events, they are, as disallowance notices are not issued where a waiver has been excuted. But here—through an oversight in the Commissioner's office—both events occurred, and hence the problem remains as to which subsection applies.

█ Both the Commissioner and the court below rely on § 6532(a)(4) and its attendant regulation, § 301.6532–1(d), in arguing that the earlier date should control:[4]

---

3. 26 U.S.C. § 6532(a)(1):

    *General rule.*—No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun . . . after the expiration of 2 years from the date of mailing . . . to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.

4. The cited regulation actually embellishes upon § 6532(a)(4) in one important respect. Where the statute nullified reconsiderations "following the mailing of a notice . . . of disallowance," the regulation adds "or after the execution of a waiver. . . . "

Taxpayers protest that this addition is improper and that the regulation is therefore inapplicable.

We cannot agree. In view of the latitude given the Commissioner in developing the regulations which provide the intricate—some would say labyrinthian—detail of our tax laws, Bingler v. Johnson, 394 U.S. 741, 749–751, 89 S.Ct. 1439, 22 L.Ed.2d 695 (1969), we do not think that the extension here was "arbitrary" or "patently inconsistent with congressional intent." Indeed, we find the addition quite consistent with our holding that Congress intended the execution of a waiver and the issuance of a disallowance notice to be treated as equally significant events.

Any consideration, reconsideration, ·or other action with respect to a claim after the mailing . . . of a notice of disallowance or after the execution of a waiver . . . shall not extend the period for bringing suit. . . .

■ Again we must disagree. Rather it seems clear that this regulation—in keeping with § 6532 as a whole—merely nullifies any *informal* reconsideration after a formal disallowance notice or waiver. Here there was no such reconsideration, but rather two equally formal events. *Cf.* Beardsley v. United States, 126 F.Supp. 775, 776–777 (D.Conn. 1954).

■ Nor do we find any merit in the Commissioner's reliance on the line of cases holding that a taxpayer cannot extend the statute by filing successive claims. *See* Stratmore v. United States, 463 F.2d 1195, 1196–1197 (3d Cir. 1972); Einson-Freeman Co. v. Corwin, 112 F.2d 683, 684 (2d Cir.), cert. denied, 311 U.S. 693, 61 S.Ct. 75, 85 L.Ed. 449 (1940); Fajardo Sugar Growers Ass'n v. United States, 161 F.Supp. 912, 916 (S.D.N.Y.1958), aff'd per curiam, 264 F.2d 671 (2d Cir. 1959). Here, of course, it was not the taxpayers' unilateral filing of a second claim, but rather the Commissioner's error in sending the unnecessary disallowance notice that arguably extended the critical deadline.

Finally, we are faced with the somewhat more troublesome question of whether in any event such inadvertence can estop the government. Here we are not unmindful of the line of cases—declining in force, but nevertheless still with us—holding that the government is not estopped by an *unauthorized* act of one of its agents. Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 383–385, 68 S.Ct. 1, 92 L.Ed. 10 (1947); Wilber National Bank v. United States, 294 U.S. 120, 123–124, 55 S.Ct. 362, 79 L. Ed. 798 (1935); Yuma Water Ass'n v. Schlecht, 262 U.S. 138, 144, 43 S.Ct. 498, 67 L.Ed. 909 (1923); Utah Power &

Light Co. v. United States, 243 U.S. 389, 408–409, 37 S.Ct. 387, 61 L.Ed. 791 (1917); Posey v. United States, 449 F. 2d 228, 233–234 (5th Cir. 1971); Bornstein v. United States, 345 F.2d 558, 562–563, 170 Ct.Cl. 576 (1965); Walsonavich v. United States, 335 F.2d 96, 101 (3d Cir. 1964); Goldstein v. United States, 227 F.2d 1, 4 (8th Cir. 1955); United States v. Globe Indemnity Co., 94 F.2d 576, 578 (2d Cir.), cert. denied, 304 U.S. 575, 58 S.Ct. 1047, 82 L.Ed. 1538 (1938).

But while the issuance of the disallowance notice was obviously erroneous, we cannot say that it was "unauthorized" or even that it was contrary to congressional intent. Rather we believe that the alternative subsections of § 6532 demonstrate a flexible approach. As another court has held in a case where the Service similarly issued a disallowance notice after a waiver had been executed:

A judge must be careful not to hold the government estopped to set up the defense of limitations in situations where there is any suggestion of collusion, or in a way which would either invite collusion, or defeat the purpose of the statute. In this instance, the statute, in paragraph (2) of sec. 6532(a), permits an extension of the 2-year period of limitations by an agreement in writing between the taxpayer and the Secretary or his delegate. Thus there is clear legislative recognition that the 2-year period of limitation is not inflexible. It will do no violence to the spirit of sec. 6532 in its entirety to hold that . . . the inadvertent action of the Director in sending notices of disallowance which stated that no suit "may be begun after the expiration of two years from the date of mailing this letter", coupled with the reliance, albeit careless, by taxpayer's lawyer on that statement, estops the government from successfully asserting that this action must be dismissed because not brought within two years after the filing of the waivers.

Exchange and Savings Bank of Berlin v. United States, 226 F.Supp. 56, 58 (D. Md.1964).[5] *See also,* Exchange and Savings Bank of Berlin v. United States, 242 F.Supp. 838 (D.Md.1965), rev'd in part, 368 F.2d 334 (4th Cir. 1966).

We would note in this regard that our holding does no violence to the fundamental purpose of any statute of limitations—the barring of stale claims. Order of Railroad Telegraphers v. Railway Express Agency, 321 U.S. 342, 348–349, 64 S.Ct. 582, 88 L.Ed. 788 (1944). The statutory limit of two years remains the same whichever triggering event is chosen, and the timing of that critical event remains completely within the control of the Commissioner. Indeed it is difficult to see how the Commissioner will be prejudiced by a seven-month "extension" on a claim which he did not disallow until four years after the contested taxes were paid and the initial refund claim was filed. The Commissioner must merely defend one more refund action for a not insubstantial amount.

In sum, given that the relevant statute of limitations is by its very terms rather flexible, that there is no suggestion that anyone in the Service acted in collusion with the taxpayers to defraud the federal fisc, and that the taxpayers' reliance on the erroneously issued disallowance notice was not unreasonable, we conclude that the government is estopped from raising the earlier deadline as a bar to this action.

We reverse and order that the case be restored to the district court's docket.

5. Though the Commissioner candidly admits that he believes *Exchange Bank* was wrongly decided, he nevertheless gamely attempts to distinguish it on the grounds that there the attorney who prepared and filed the action had not been with the law firm when the waiver was executed, while here the same attorneys were responsible for the case throughout. However this distinction assumes that it is less likely that a new attorney—reviewing a file in preparation of a complaint—will note the inconsistency between the waiver and disallowance forms than that an attorney will remember a routine waiver for almost two years.

While we doubt that either is very likely, we trust that most in our profession would judge legal competency more by an ability to read than by a photographic memory. Thus while we cannot endorse the rather lax filing system of taxpayers' attorneys—who apparently also misplaced the waiver form—we cannot say that their reliance on the subsequent disallowance notice was so unreasonable that their clients should be denied their day in court.