**Theodore F. TONKONOGY, Plaintiff,**

v.

**UNTIED STATES of America, Defendant.**

No. 75 Civ. 4746.

United States District Court, S. D. New York.

May 17, 1976.

Theodore F. Tonkonogy, pro se.

Peter C. Salerno, New York City, for defendant.

## MEMORANDUM AND ORDER

OWEN, District Judge.

The question presented by this case is whether a taxpayer who is critically ill following a second heart attack is entitled to rely upon a letter from the Internal Revenue Service apparently extending the time to make payment of a compromise agreement when, pursuant to that letter, he makes prompt and full payment upon minimal recovery.

Plaintiff Theodore Tonkonogy, a practicing attorney of mature years, commenced this action against the United States pursuant to 28 U.S.C. § 1346(a) to recover $1,380.19 in taxes and interest paid to the Internal Revenue Service. Defendant moved to dismiss the complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure and plaintiff makes a cross-motion for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. There being no material issues of fact and affidavits being before the Court summary judgment is appropriate.

The facts in this case speak for themselves.[1] In 1962 the taxpayer entered into a collateral agreement with the IRS in connection with a compromise of various tax liabilities that had been assessed against him. Over the years the taxpayer made payments until by October 1972 there re-

---

1. Cf. *Corniel-Rodriguez v. Immig. & Nat. Service,* 532 F.2d 301 (2d Cir. 1976).

mained only a balance of $400.00 due under the collateral agreement.

It is undisputed that on October 2, 1972 the taxpayer was hospitalized with his second heart attack of that year and as a result missed the scheduled October payment. On October 12 the IRS wrote the taxpayer requesting that the entire $400.00 due under the compromise and collateral agreements be paid within ten days. The taxpayer did not answer this letter as he was in the hospital until October 17, and later confined to his bed with, one can fairly assume, more compelling matters occupying his mind, such as his ability to return to work and support himself and his family. On November 22, the taxpayer received a second letter from the IRS which stated:

> We have no record of receiving a reply to our recent letter asking about the past due installments on your Offer in Compromise
>
> Please pay the amount due [$400.00] shown above as soon as possible, or let us know what you plan to do about the commitment.

The plaintiff answered this letter with a handwritten note dated December 4 stating that he had been ill and in the hospital, and that he expected the situation to be better by January and would resume his $100.00 a month payments or pay the entire balance by that date. IRS then mailed a third letter dated December 7 to the taxpayer notifying him that he was in default of the agreements and demanding the entire unpaid tax liability. Tonkonogy, however, says he never received this letter. In any event, within five days of the date IRS claims the third letter is dated, on December 12, the taxpayer received a fee due him and sent IRS a check for the entire balance due under the agreement, $400.00. IRS thereupon credited him with the payment but demanded $1,380.19 more as the outstanding balance of the taxpayer's liability. The taxpayer thereupon borrowed money and paid the $1,380.19 under protest and commenced administrative proceedings for a refund. Having been unsuccessful, he commenced this action.

The position of the IRS is that even though the taxpayer was gravely ill in the hospital at the scheduled time of payment, and even though it then sent him a letter apparently extending the time for payment, and even though he paid in full shortly thereafter, nevertheless he defaulted on the compromise agreement, and is consequently liable for the full amount of the original debt. The taxpayer admits that he was nominally in default, but raises the affirmative defense of equitable estoppel.

The general rule is that equitable estoppel is not applicable against the government regardless of the actions of its agents. However, the rule is not without exception.[2] With respect to the IRS, equitable estoppel is appropriate under certain limited circumstances.[3] Specifically, there must be

> "(1) a misrepresentation by an agent of the United States acting within the apparent scope of his duties; (2) the absence of contrary knowledge by the taxpayer in circumstances where he may reasonably act in reliance; (3) actual reliance; (4) detriment; and (5) a factual context in which the absence of equitable relief would be unconscionable."[4]

In this case, the taxpayer reasonably assumed, upon receipt of the letter from the IRS requesting payment "as soon as possible" and suggesting the possibility of alternative arrangements, that he could defer

---

**2.** *E. g. United States v. Lazy FC Ranch,* 481 F.2d 985 (9th Cir. 1973). *See generally* Note, Emergence of an Equitable Doctrine of Estoppel Against The Government—The Oil Shale Cases, 46 U.Colo.L.Rev. 433 (1975).

**3.** *Schuster v. C.I.R.,* 312 F.2d 311, 317 (9th Cir. 1962); *Simmons v. United States,* 308 F.2d 938, 945 (5th Cir. 1962); *Vestal v. Commissioner of Internal Revenue,* 80 U.S.App.D.C. 264, 152 F.2d 132 (1945); *Exchange & Savings Bank v. United States,* 226 F.Supp. 56 (D.C.Md.1964).

**4.** Lynn and Gerson, Quasi-Estoppel And Abuse of Discretion As Applied Against the United States in Federal Tax Controversies, 19 Tax L.Rev. 487, 488–489 (1964).

payment until he was capable of leaving bed. Thus, instead of arranging to make payment prior to the time he was "found" in default, he wrote a letter proposing an alternative payment schedule. But then, having complied with IRS instructions, he was abruptly informed that he was in default.

The IRS states that the agent who wrote the letter apparently extending the time for payment had no actual authority to amend the collateral agreement between the parties and thus it cannot be held to any representations made. However, *Brandt v. Hickel,* 427 F.2d 53 (9th Cir. 1970) is to the contrary. There the Land Manager of the United States Bureau of Land Management allowed the plaintiffs 30 days to resubmit an offer for a lease without a loss of priority. As a result, they gave up an appeal of the rejection of their earlier offer. The government stated that the Land Manager had no authority to give such an extension. The court stated at 56:

> . . . some forms of erroneous advice are so closely connected to the basic fairness of the administrative decision making process that the government may be estopped from disavowing the misstatement.

Thus, by analogy, an IRS agent may not have the *actual* authority to bind the government; yet as to a taxpayer who relies upon his statements to his detriment at a time of great personal trauma and concern, that agent will be found to be acting within the apparent scope of his authority. Anything to the contrary would, in my opinion, be ". . . hardly worthy of our great government." *Brandt v. Hickel, supra,* at 57.

The government urges to the contrary that *U.S. v. Feinberg,* 372 F.2d 352 (3rd Cir. 1965) mandates dismissal. There the taxpayer sought, without success, to use estoppel against the IRS. That case, however, is clearly distinguishable. The taxpayer had long been in default of his agreements by remitting payments substantially less than required and by missing four payments entirely. He argued that the government's acceptance of his reduced payments for so long worked an estoppel, and further that the government's silence had induced his reliance. The facts distinguish themselves.

I conclude that by any standard of equity and fairness the government is estopped in this case from finding the taxpayer in default. In so concluding, I note that a decision adverse to the government here would not impose any injury upon the public.[5]

Summary judgment is hereby granted to the plaintiff and the refund with interest is hereby ordered. Defendant's cross-motion to dismiss is denied.

---

5. *See Brandt v. Hickel, supra,* at p. 57.