**Lacy M. HENRY d/b/a Qualified Personnel, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 104–83 T.

United States Claims Court.

May 4, 1988.

Newman A. Townsend, Jr. and Robert B. Womble, Raleigh, N.C., for plaintiff. Cecil W. Harrison, Jr., of counsel.

Mildred L. Seidman and Robert N. Dorosin, Washington, D.C., for defendant.

OPINION

HORN, Judge.

Plaintiff, Lacy M. Henry, doing business as Qualified Personnel, brings this action for recovery of Federal Insurance Contribution Act (FICA) and Federal Unemployment Tax Act (FUTA) taxes imposed by the Internal Revenue Service (IRS), and interest thereon, for the periods September 30,

1975 through June 30, 1979, which he asserts were wrongfully collected. The defendant, the United States of America, maintains that the plaintiff's lawsuit is barred by the statute of limitations. The plaintiff argues, however, that the government should be estopped from reliance on the statute of limitations defense.

The original complaint in this case was filed on February 28, 1983. In a Memorandum Order filed on July 19, 1984, Judge Seto granted defendant's motion to dismiss for lack of jurisdiction and entered judgment for the defendant, *Henry v. United States*, No. 104–83T (Cl.Ct. July 19, 1984). On appeal to the Court of Appeals for the Federal Circuit, the lower Court decision was affirmed as to an issue involving the propriety of the filing of the Federal Tax Waiver Forms 2297 more than 2 years before the filing of the lawsuit. The Circuit Court, however, vacated and remanded the case to the U.S. Claims Court on the issue of whether the government was estopped from raising the statute of limitations defense. *Henry v. United States*, No. 84–1596, slip op. (Fed.Cir. Apr. 22, 1985) [770 F.2d 178 (table)]. The Circuit Court concluded: "a question of fact was presented in the court below as to the existence of the bar of limitations, which could not properly be resolved on the Government's motion to dismiss." Slip op. at 5–6.

The only issue addressed by this Court in the opinion which follows, therefore, is whether the defendant is estopped from raising the statute of limitations defense. After full consideration of the facts and arguments presented by both parties at the trial and in written submissions, this Court finds that the Government is not so estopped and finds further that defendant's motion to dismiss should be granted.

*Background*

In January 1974, plaintiff, Lacy M. Henry (taxpayer) commenced operating Qualified Personnel (Qualified) as a sole proprietorship, with its principal place of business in Wilmington, North Carolina. Qualified engaged in business as a labor broker. For the first two quarters of 1975, Qualified did not pay FICA and FUTA taxes and file employment tax returns with respect to the workers brokered by it. The IRS commenced a payroll tax examination of Qualified in the first half of 1975. The examination resulted in the workers brokered by Qualified being classified by the IRS as employees. Accordingly, appropriate taxes were proposed for the quarter ending March 31, 1974 through the quarter ending June 30, 1975. Qualified paid the additional tax assessment, and beginning with the quarter ending September 30, 1975, Qualified paid FICA and FUTA taxes and filed employment tax returns with respect to the workers brokered by it.[1]

In October 1979, as a result of the enactment of Section 530 of the Revenue Act of 1978, Qualified filed a claim with the IRS for a refund of the FICA and FUTA taxes paid for the quarter ending March 31, 1974 through the quarter ending June 30, 1979. Claims for refund for the quarter ending March 31, 1974 through the quarter ending June 30, 1975, were allowed. The tax payments at issue before the Court at this time relate to the quarters September 30, 1975 through the quarter ending June 30, 1979, during which time Qualified paid FICA and FUTA taxes and filed employment tax returns. IRS Revenue Agent, Charles E. Delancey was assigned to review the claim. During 1980, discussions ensued between IRS and Qualified, principally with Qualified's agent, Windham,[2] with respect to the claim. The IRS issued a technical advice

1. The case at bar does not represent the taxpayer's sole interaction with the courts on matters of taxation. The Court notes, for example, *Henry v. United States*, 793 F.2d 289 (Fed.Cir.1986), in which the taxpayer appealed to the Federal Circuit following an adverse decision in the United States Claims Court on a claim for refund of FICA and FUTA taxes paid in the years 1979 through 1982. The taxpayer appears neither unsophisticated nor inexperienced in matters of taxation.

2. On March 17, 1980, the taxpayer executed the Department of Treasury Form 2848 granting Power of Attorney to Qualified's accountant, Grady J. Windham, to represent Qualified with respect to the refund claims for quarters ending September 30, 1975 through December 31, 1979.

memorandum in September 1980, which recommended disallowance of Qualified's refund claim. A letter accompanying the technical advice memorandum to the taxpayer from the IRS listed Letitia B. Johnson of the Greensboro, North Carolina District Office of the IRS as the person to contact with questions regarding the memorandum.

It is clear to this Court that five separate IRS Forms 2297 entitled "Waiver of Statutory Notification of Claim Disallowances" (one for each year, from 1975 to 1979) were executed by Henry on November 18, 1980, transmitted to the IRS and filed with the IRS no later than November 21, 1980. Henry maintains that he does not remember signing the Forms 2297, but has acknowledged, in pre-trial testimony and at trial, that the signatures on each of the forms are his. Nor has the taxpayer maintained that the signatures were obtained in any illegal or coercive manner. This Court, therefore, must find that Henry did indeed sign each of the Forms 2297. Each of the Forms 2297 which the taxpayer signed states in part:

> I understand that the filing of this waiver is irrevocable and it will begin the 2–year period for filing suit for refund of the claims disallowed as if the notice of disallowance had been sent by certified or registered mail.

Other than apparent agreement that the Forms 2297 were properly signed by the taxpayer and filed with the IRS (as determined finally by the Circuit Court), the testimony presented at the trial by both parties is replete with vagaries and instances of poor memory. Moreover, witnesses for the plaintiff and for the defendant do not share similar recollections with respect to the numerous telephone contacts between the parties prior to the time plaintiff decided whether or not to file the lawsuit. Consequently, the Court pieced together the facts, based on the testimony it heard and its observations of each witness while on the stand.

On January 19, 1981, Windham testified that he contacted Johnson at the Greensboro office of the IRS and inquired as to the statute of limitations for filing a refund action. According to Windham, after researching the matter, Johnson returned his call, advised him that if a Form 2297 had been signed and filed, the applicable statute of limitations would expire two years from its filing. She further advised him that she would mail him some information concerning the statute of limitations as it applied to this case. Johnson, however, indicated in her testimony that she had neither memory nor record of having received the call.

On January 26, 1981, Windham received from the Greensboro, North Carolina District Office of the IRS, a copy of an IRS Form Letter 569, often referred to as a "30–day letter," dated January 21, 1981. The letter notified the taxpayer that full disallowance of the taxpayer's claim had been proposed. Enclosed with the 30–day letter was IRS Publication 5 (Rev–80), labeled "Appeal Rights and Preparation of Protests for Unagreed Cases." The last sentence of that publication reads: "If we have disallowed your claim, a suit for refund must be filed no later than 2 years from the date of our disallowance." Windham testified that he believed that the 30–day letter was in response to his request for information on the statute of limitations.

On March 4, 1981, Qualified received a certified letter, Form 1906, Statutory Notice of Disallowance, dated March 4, 1981, commonly referred to as a "906 letter." The letter stated in part:

> If you wish to bring suit or proceedings for the recovery of any tax ... the law permits you to do this within 2 years from the mailing of this letter. However, if you signed a waiver of the notice of disallowance (Form 2297), the period for bringing suit starts on the date the waiver was filed.

Windham testified that the taxpayer decided to postpone the filing of a lawsuit at that time, based on his perception of technical advice solicited from the IRS, and on his comprehension of the status of the relevant law: that no cases at that time been decided directly on point, but that some cases

which might be helpful were pending. Windham further testified that in June 1982, after he became aware of the decision in *Ridgewells, Inc. v. United States*, 228 Ct.Cl. 393, 655 F.2d 1098 (1981), as he understood in favor of the taxpayer's position, he informed taxpayer of the decision. The taxpayer then decided to proceed to file suit.

Windham testified that sometime before September 30, 1982, when he began assembling documents for review by the taxpayer's attorneys in order to file the tax claim, he contacted IRS Agent Delancey to ascertain whether the taxpayer had filed the Forms 2297 applicable to the claim. Delancey responded by memorandum, dated September 29, 1982. Together with the memorandum he transmitted forms, which he indicated Windham could file to request information from the IRS, but which forms might have to be modified in order to find out if the taxpayer had filed Forms 2297 in this case. Delancey further suggested that Windham should contact the Memphis IRS office representative.

Windham further testified that, pursuant to Delancey's suggestion, he called the Memphis office and was advised to call the contact person in Greensboro, North Carolina. On September 30, 1982, Windham claims he called Johnson, the designated contact person. Johnson was unavailable, and Windham was put in contact with Agent Walter J. Grace. Windham asked Grace about the filing of Form 2297 and informed him of the receipt of the "906" form letter. Grace allegedly stated that if the taxpayer received the "906" letter by certified mail, then no one had signed the Forms 2297 and that the taxpayer would have two years from the date of mailing of the Notice of Disallowance in which to file an action for return. Grace testified that he does not remember the call, however his statement as to how he probably would have responded to such an inquiry corroborated Windham's version of Grace's statements.

Windham concluded his direct testimony by indicating that subsequent to his conversation with Agent Grace, his only further involvement was to finish collecting the file and to turn it over to the attorneys for legal action.

## Discussion

The Court of Appeals for the Federal Circuit remanded to this Court only one issue for consideration when it found that: "a question of fact was presented to the Court below [Seto, J.] as to the existence of the bar of limitations which could not properly be resolved on the Government's Motion to Dismiss." (Slip op. at 5–6). The trial which was held and the opinion, which follows, therefore, is limited to resolving only the question of how to apply the statute of limitations defense, raised by the defendant in this case.

Section 6532(a) of the Internal Revenue Code of 1954, as amended (26 U.S.C. § 6532(a) (1982)), governs periods of limitations for suits by taxpayers for refund. The applicable provisions provide:

**(1) General rule**

No suit or proceeding under section 7422(a) for recovery of any internal revenue tax, penalty, or other sum, shall be begun ... after the expiration of 2 years from date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of disallowance of the part of the claim to which the suit or proceeding relates.

**(2) Extension of time**

The 2–year period prescribed in paragraph (1) shall be extended for such period as may be agreed upon in writing between the taxpayer and the Secretary.

**(3) Waiver of notice of disallowance**

If any person files a written waiver of the requirement that he be mailed a notice of disallowance, the 2–year period prescribed in paragraph (a)(1) shall begin on the date such waiver is filed.

**(4) Reconsideration after mailing of notice**

Any consideration of action by the Secretary with respect to such claim following the mailing of a notice by certified mail or registered mail of disallowance shall not operate to extend the period within which suit may be begun.

In the ordinary case, given the existence of signed Waiver of Disallowance Forms 2297, dated November 18, 1980, the statute of limitations would have started to run on or before November 21, 1980, the date on which the defendant's records first indicate that the forms were in the IRS files, in accordance with Section 6532(a)(3), above. The instant suit was filed on February 23, 1983, approximately three months after expiration of that statutory period, triggered by the filing of the waivers.

The plaintiff argues, however, that the Government should be estopped in the case before the Court from claiming the statute of limitations as a bar to relief, despite the existence of the signed Forms 2297 on file with the IRS. Plaintiff further argues that the allowable time period for filing the instant suit should be calculated pursuant to Section 6532(a)(1), from the date the Notice of Disallowance was mailed on March 4, 1981. Consequently, plaintiff maintains that the lawsuit was filed on a timely basis.

The doctrine of estoppel is a judicial remedy by which a party may be precluded by his own act or omission, from asserting a right to which he otherwise would have been entitled. Although the Supreme Court in *Heckler v. United States*, 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984), did not come to a final conclusion as to whether estoppel could be raised against the United States, the *Heckler* Court seems to suggest that there are certain limited cases in which such a finding might not be precluded. *Id.* at 60, 104 S.Ct. at 2224. The Court stated, that: when an estoppel is asserted against the Government, as a first step, the private party "surely cannot prevail without at least demonstrating that the traditional elements of an estoppel are present." *Id.* at 61, 104 S.Ct. at 2224.

When a claimant raises estoppel against the government, in order to prevail and warrant judicial intervention, the defendant bears a heavy burden of proving the elements of estoppel. (See *Heckler* at 61, 104 S.Ct. at 2224). Given the existence of the filed Forms 2297, which plaintiff acknowledged were signed by Henry, the plaintiff

has the substantial onus of demonstrating his right to escape application of the normal statute of limitations.

In *Tonkonogy v. United States*, 417 F.Supp. 78, 79 (S.D.N.Y.1976), the District Court articulated clear guidance for applying the estoppel test against the government. This Court believes the *Tonkonogy* standards are common-sense guidelines, appropriate for adaptation in this Court, and should be applied to test plaintiff's estoppel claims in the instant case. In order to prevail on an estoppel theory, according to the *Tonkonogy* Court, the following elements must be proven.

(1) a misrepresentation by an agent of the United States acting within the apparent scope of his duties;

(2) the absence of contrary knowledge by the taxpayer in circumstances where he may reasonably act in reliance;

(3) actual reliance;

(4) detriment; and

(5) a factual context in which the absence of equitable relief would be unconscionable.

*Id.* at 79. *See also Lynn and Gerson, Quasi-Estoppel and Abuse of Discretion As Applied Against the United States in Federal Tax Controversies*, 19 Tax L.Rev. 487, 488–89 (1964), and cases cited therein.

The plaintiff alleges that estoppel is appropriate in the case at bar because agents of the United States made misrepresentations to the taxpayer and his agent by failing clearly to inform the taxpayer that the Forms 2297 had been filed. These representations were manifested, the taxpayer alleges, through the issuance of a 30–Day Letter (the proposed Notice of Disallowance), through a statement contained in Publication 5 (which was sent to the taxpayer with the 30–day letter), and through the issuance of the Notice of Disallowance. Although plaintiff seems to argue that the failure of the IRS officials to send plaintiff copies of the signed Forms 2297, or specifically to inform the taxpayer that they were on file, constituted a misrepresentation as to their existence, plaintiff never makes a direct claim that any official ever stated that no Forms 2297 had been filed.

The taxpayer's agent, Windham, testified that he contacted IRS employee Johnson on January 19, 1981, in order to inquire about the applicable statute of limitations. He testified that Johnson responded to his inquiry, after some research, and informed him that the statute of limitations would begin to run upon the filing of signed Forms 2297. Johnson, however, testified that she had no recollection of or written record of the conversation, but that the telephone conversation could have occurred. Windham further stated that Johnson advised him that she would mail some information regarding the statute of limitations to him. When, according to Windham, on January 26, 1981, he received the 30–Day Letter dated January 21, 1981, notifying him of the proposed disallowance of taxpayer's full claim, together with a copy of publication 5, neither of which mentioned the existence of Forms 2297, he considered the letter to be a response to his previous inquiry of Johnson. He testified that he, therefore, surmised that no Forms 2297 had been filed by the taxpayer.

Windham testified that along with the 30–Day Letter he received a copy of IRS Publication 5, entitled "Appeal Rights and Preparation of Protests for Unagreed Cases." Publication 5 does not mention Form 2297, but it does contain a statement that if the IRS had disallowed the taxpayer's claim, "a suit for refund must be filed no later than 2 years from the date of disallowance." The taxpayer alleges that this sentence constituted a misrepresentation by government officials, in that in a case such as his, in which Forms 2297 had been filed, he should not have been sent information which discussed an inapplicable statute of limitations.

The taxpayer asserts that the third misrepresentation made my the government occurred by the mailing of a certified Statutory Notice of Disallowance, commonly referred to as a "906 letter." The taxpayer offered evidence, and tried to argue by analogy, that the mailing of such Statutory Notice of Disallowance is not consistent with the procedures established in the Internal Revenue Manual for quality reviewers for refund of employment taxes. The taxpayer acknowledges, however, that the language in the manual does not specifically address the procedures to be followed in a case, such as the instant one, in which a Form 3363 had not been secured, but a Form 2297 had been executed and filed.[3] The taxpayer attempts to draw an analogy from several Sections of the Handbook for Audit Reviewers, to establish the fact that a Notice of Disallowance should not have been sent to the taxpayer, if a Form 2297 was on file. We note, however, that even failure to follow an agency practice manual, the provisions of which are not mandated by the Constitution, Federal statute or Federal regulation, has not been held as automatic grounds for estoppel against the government. *Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981).

Based on the testimony of the witnesses and the documents introduced by both parties, the Court finds that none of the communications, alleged by plaintiff to be misrepresentations, result in a conclusion by the Court that the plaintiff was mislead on the specific issue of whether Forms 2297 had been filed in the taxpayer's case. The communications were generic in nature, and should not have been viewed by the taxpayer as directly resolving whether or not Forms 2297 had been filed in the case at bar.

Johnson's alleged failure to transmit information regarding the statute of limitations, combined with the receipt by Windham of a 30–Day Letter, which document made no specific reference to the filing of

---

**3.** If a taxpayer signs a Form 3363, the case is referred to as an "agreed" case, and the IRS will not continue to process the claim. If the taxpayer does not sign the Form 3363, the case is referred to as an "unagreed" case and the Service continues to process the claim. Subsection 4675.1(7) of Section 4670 (8–2–79) of Part IV of the Internal Revenue Manual provides:

If an agreement [a Form 3363] is not secured when a claim for refund is proposed for disallowance in whole or in part, or if the taxpayer signs an agreement [a Form 3363] but refuses to execute Form 2297, a certified notice of disallowance is issued after all other administrative action has been concluded.

Forms 2297, cannot be construed to be a representation by the government that no such forms were on file. Those events appear to have been a series of communications which a reasonable businessman and his advisor/agent should not have taken to resolve the issue of whether the taxpayer had filed Forms 2297. This is especially true since IRS officials Johnson, Delancey and Grace testified that it was their practice to inform taxpayers that the procedure generally to be followed when a taxpayer, in a case with an open file, requested a document in his file (such as a copy of a Form 2297, originally signed and submitted by the taxpayer), which would not routinely be sent to him, was to instruct the taxpayer to make the request in writing, before the IRS would send the document.[4] The taxpayer has presented no evidence indicating that he made such a written request.

The inclusion of Publication 5, inasmuch as it describes the steps to be taken in the event of disagreement with the examiner's findings, also did not constitute a misrepresentation. Although the taxpayer argues that he was mislead by the receipt of the Publication 5 with the 30–Day Letter, the publication refers only to the statute of limitations applicable to cases in which taxpayers' cases had been disallowed. Plaintiff's reliance on this document, therefore, appears unreasonable given the general nature of the Form Publication 5, the silence of the publication on Forms 2297 and the existence of the signed Forms 2297 on file in the taxpayer's case.

The Court further finds that the mailing of the Form 906 Notice of Disallowance was not a misrepresentation by the government. Nothing prohibited mailing the 906 letter, even when a Form 2297 had been filed. This conclusion is buttressed by the fact that the Notice of Disallowance itself contained language putting the taxpayer on notice that if a Form 2297 had been filed, the statute of limitations would begin to run on the filing date of the Form 2297, and would not be altered by receipt of the Notice of Disallowance. The 906 letter received by the taxpayer provided in relevant part:

> If you wish to bring suit or proceedings for the recovery of any tax ... the law permits you to do this within 2 years from the mailing of this letter. However, if you signed a waiver of the notice of disallowance (Form 2297), the period for bringing suit starts on the date the waiver was filed.

The language of the Notice of Disallowance appears to be directly on point in that it speaks to the occurrence of the event, i.e. the mailing of the Notice of Disallowance, despite the existence of filed Forms 2297. The sections in the Auditor's Manual, highlighted by the plaintiff in its briefs do nothing to alter the Court's conclusion.

A fourth communication, an oral statement allegedly made by IRS Revenue Agent Grace, if it occurred, was potentially the most confusing to the taxpayer. According to Windham's testimony, Agent Grace allegedly indicated that if the taxpayer had received the "906" Notice of Disallowance by certified mail, then no one had signed the Forms 2297 and the taxpayer would have two years from the date of mailing of the Notice of Disallowance in which to file a claim in the Courts. This oral advice was allegedly given to Windham in response to an inquiry by him to Agent Grace about the statute of limitations (late in the history of the case, in the fall of 1982, and only after the taxpayer had decided to go ahead and file a lawsuit.[5]) Although Agent Grace testified

---

4. Defendant's Motion for Leave to Correct Defendant's Briefs to rectify their earlier mistatements that IRS officials could not have given information to Windham or taxpayer without a written request does not alter the Court's findings. Nothing in IRS rules prohibits requesting such a written communication prior to release of the information, and testimony of the particular IRS officials involved in this case appears consistent that it was their practice to ask for such a written request.

5. There is neither evidence in the record to indicate that Grace was giving Windham specific advice as to the taxpayer's case nor any indication that he was at all aware of the status of the taxpayer's case or the contents of the IRS file corresponding to the taxpayer's case. Rather, assuming the call took place, he appears to have been giving advice as to his own general practice as an individual, IRS quality reviewer.

that he may have received a call from Windham, he did not recall any such conversation.

Even though Grace said he probably would have given a response as described by Windham about his own practice, under the circumstances of this case, the taxpayer was not reasonable in relying on Grace's response. Windham had made a general inquiry of Grace as to the general practice of the IRS with respect to the filing of Forms 2297. Grace's oral statement of general procedure also contradicted the statement of the Notice of Disallowance received by the taxpayer, which by its own terms clearly contemplated the filing of Forms 2297 by raising the possibility that the Forms 2297 had been filed. As pointed out above, the Notice of Disallowance itself contained the following words:

> The law permits you to do this [file a refund suit] within 2 years from the mailing of this letter. However, if you signed a waiver of the notice of disallowance (Form 2297), the period for bringing suit began to run on the date the waiver was filed.

The statutory and regulatory, legal systems in this country presume an understanding of the consequences of one's own actions, absent a showing of disability, incompetence or fraudulent inducement. Ignorance of the law is not recognized as an excuse. It is axiomatic that when undertaking a business venture, those conducting business operations are presumed to understand the legal consequences of documents which they sign. Moreover, they have a heavy responsibility to determine legal dates by which they must make filings with the government or with the courts on behalf of the businesses they run.

Throughout the trial, the Court was troubled by several factual aspects of the case.

The principal IRS witnesses, Letitia Johnson, Walter Grace and Karen Czieskleva, although largely credible, did not present a picture of a well organized bureaucracy ready, willing, and able to serve the public.[6] It is unfortunate that the key IRS officials assigned to the case and the records were not co-located and that the taxpayer and its representatives were forced to contact so many different individuals, in so many different locations, in order to try to obtain information pertinent to their case. However, although the process appears to have been cumbersome, and apparently inefficient, the Court does not find that the defendant's actions warrant judicial intervention.

With respect to the plaintiff's case, the Court found it peculiar that plaintiff, Lacy Henry, whose business, Qualified Personnel, generated the instant lawsuit, testified only briefly and primarily only to verify that the five relevant Forms 2297 bore his signature, but, that he could not recall signing them. Further, witness Windham's testimony appears fraught with inconsistencies, which, when viewed together, raise questions regarding the totality of his recollection. For example, although the general thrust of Windham's testimony was designed to suggest that the IRS led the taxpayer to believe that no Forms 2297 had been filed in the case, his cross examination testimony was contrary. At the trial, he read from exhibits introduced as the typed and handwritten version of his contemporaneous notes of a second conversation with Johnson, on January 19, 1981: "She returned call after research and stated 2 years from signing of 2297. Was to mail info to me." These notes not only appear at some variance with his direct testimony, in which he suggests that she told him that the statute of limitations started running from the date the Form 2297 was filed, if it had been filed, but

---

**6.** The Court had more difficulty determining how clearly government witness Delancey remembered the events about which he testified. On review, however, the Court felt that his testimony was not critical to the outcome of the case on the issue of estoppel, given the uncontested, signed Forms 2297 in taxpayer's file. Delancey's testimony appears to have been more im-

portant to the issue of proper filing, which the Court of Appeals did not remand to this Court. The discrepancy in Delancey's notes, regarding "waiving" or "signing" the waiver of statutory notification, appears indeed to be a legitimate "slip of the pencil" as indicated by Delancey in his testimony, despite the IRS reviewers' concurrence.

suggests rather that such forms might have been filed.

Likewise, it seems peculiar to the Court that, although Windham and the taxpayer try to suggest in their testimony that they were operating on the assumption that no Forms 2297 had been signed with respect to computing the operative statute of limitations, when preparing to file the lawsuit, Windham nonetheless called Mr. Delancey, sometime in September of 1982, to determine whether Forms 2297 had been filed with him at the time he was working on the case.

The trial testimonies of Windham and Henry, during which the Court had an opportunity to observe the witnesses, and the documents introduced, which the Court has reviewed, taken in their best light, suggest, at least that both men remained confused regarding the final date upon which a refund claim would have to be filed with this Court. This lack of certainty on their parts regarding the filing deadline, their failure to make further inquiries until the eve of preparation for trial, taken together with the existence of not one, but five filed Forms 2297, which Mr. Henry acknowledges each bear his signature, leads the Court to conclude that *Tonkonogy* test element 2 (the absence of contrary knowledge), and *Tonkonogy* test element 3 (actual reliance) are not met in this case.

The totality of the facts and circumstances presented forces the Court to conclude that this case does not present a "factual context in which the absence of equitable relief would be unconscionable." (*Tonkonogy* test element 5). Moreover, given the facts presented, even absent the stringency of the *Tonkonogy,* estoppel test, it would be difficult under any reasonable, common-sense, estoppel test for this Court to find in this case that the acts of the defendant mislead the taxpayer sufficiently to warrant judicial intervention to prevent an injustice created by the defendant. In this case, the Court finds that the defendant should not be estopped from raising the statute of limitations defense.

The taxpayer cites to a number of cases as substantially similar to the case at bar, in an attempt to establish that there is no legal basis for applying the doctrine of estoppel in this case, including *Exchange & Savings Bank v. United States,* 226 F.Supp. 56 (D.Md.1964), and *Miller v. United States,* 500 F.2d 1007 (2d Cir.1974). In both cases, the government was precluded from successfully asserting that a tax refund action was barred when brought more than two years after the taxpayers had filed waivers of notices of claim disallowance because they had been sent notices of disallowance of their claims. *Exchange & Savings Bank* and *Miller* can be distinguished from the case at bar because in neither of those cases did the statutory notice of disallowance received by the plaintiffs refer to the consequences of executing Forms 2297.[7] In the case at bar, the notice of disallowance itself advised that if a Form 2297 had been filed, suit had to be brought within two years of that filing. *Exchange & Savings Bank* (a Maryland District Court case) and *Miller* (a Second Circuit Court case), do not control in this situation, and because they are factually distinguishable on a critical point, they also are not persuasive.

The two cases cited by the taxpayer which follow *Exchange & Savings Bank*

---

7. In *Exchange & Savings Bank,* 226 F.Supp. at 57, the notices of disallowance of the taxpayer's claims stated:

> In accordance with the provisions of existing internal revenue laws, this notice of disallowance in full of your claim or claims is hereby given.
>
> No suit or proceeding in any court for the recovery of any internal revenue tax, penalty, or other sum which is a part of the claim for which this notice of disallowance is issued, may be begun after the expiration of two years from the date of mailing of this letter.

In the District Court opinion in *Miller,* 365 F.Supp. 383, 385 (E.D.N.Y.1973), *rev'd* 500 F.2d 1007 (2d Cir.1974), the notice of disallowance of the taxpayer's claim stated:

> If you still disagree, and wish to begin suit or proceeding for the recovery of any taxes, penalties, or other moneys for which this notice of disallowance is issued, the law requires you to do so within two years from the mailing date of this letter.

and *Miller, Heath v. United States*, 219 Ct.Cl. 582 (1972) and *Southeast Bank of Orlando v. United States*, 230 Ct.Cl. 277, 676 F.2d 660 (1982), likewise can be distinguished from the case at bar. *Heath* involved the receipt of two separate notices of disallowance by the taxpayer, the second of which was marked "corrected copy", and advised the taxpayer that he could file suit within two years from the date of its mailing. The Court found that reliance on the second notice by the taxpayer was reasonable. In *Southeast Bank*, the Court of Claims found that the trustees of a trust could reasonably view a second disallowance letter, that appeared to follow reconsideration of a claim previously disallowed, as an extension of the statute of limitations. Neither *Heath* nor *Southeast Bank* involved facts similar to the instant case, as neither fact pattern referred to the existence of a signed and filed waiver of notice of claim disallowance (Form 2297) that clearly triggered the statute of limitations.

Recently and subsequent to submission of this case to this Court, the Court of Appeals for the Federal Circuit decided *Haber v. United States*, 831 F.2d 1051 (Fed. Cir.1987), *rev'g* 8 Cl.Ct. 371 (1985), petition for reh'g pending. *Haber*, also, is not dispositive of the case at bar. In *Haber*, the Federal Circuit found that a suit filed by a taxpayer seeking a refund based on foreign taxes paid was timely. The taxpayer was entitled to rely on an IRS oral representation to his accountant that earlier notice of disallowance had been withdrawn. As in *Heath* and *Southeast Bank*, in *Haber* there appears to have been no signed document (Form 2297), waiving the notice of claim disallowance and triggering the running of the statute of limitations.

### Conclusion

Upon consideration of the testimony presented at trial and the exhibits offered by the parties, the Court hereby finds that the defendant is not estopped from raising the defense of the statute of limitations. Taxpayer's suit is untimely. The Clerk of the Court is directed to enter judgment in favor of the defendant, the United States

of America. Plaintiff's complaint must be dismissed.

IT IS SO ORDERED.