932 F.2d 1100
 Bankr. L. Rep. P 74,254
In the Matter of Denis Edward BOWYER, Debtor.
NCNB TEXAS NATIONAL BANK, formerly First Republicbank
Austin, Appellant,
v.
Denis Edward BOWYER, Appellee.
 No. 89-7029.
 United States Court of Appeals,
Fifth Circuit.
 May 23, 1991.
Rehearing and Rehearing En Banc Denied
July 22, 1991.
 
 Joanalys B. Smith, Thomas T. Rogers, Small, Craig & Werkenthin, Austin, Tex., for appellant.
 William C. Davidson, Jr., Austin, Tex., for appellee.
 Appeal from the United States District Court For the Western District of Texas.
 ON PETITION FOR REHEARING
 (Opinion November 14, 1990, 5th Cir. 916 F.2d 1056)
 Before WISDOM, DAVIS and BARKSDALE, Circuit Judges.
 PER CURIAM:
 
 
 1
 On reflection, we are persuaded that we did not give the bankruptcy court's findings the required deference. When we give those findings the deference that is due them, we conclude that the bankruptcy court and the district court correctly granted discharge to Bowyer under the Bankruptcy Code.
 
 I.
 
 2
 The bankruptcy court's finding that Dr. Bowyer did not decide to file a bankruptcy petition until October 1987 is critical. If that finding is not clearly erroneous, the July and August 1987 transactions we relied on in our earlier opinion to deny Bowyer's discharge have limited relevance. More particularly, the bank's argument that the July sale of the gold Mapleleafs was a transfer with intent to hinder, delay or defraud a creditor loses its force unless Dr. Bowyer sold this asset to avoid having it fall into his bankrupt estate. If in July 1987 Dr. Bowyer intended to pay NCNB's note when due and had no plans to file bankruptcy, this sale and the expenditure of funds realized from that sale have little significance for our purposes. The same analysis applies to Dr. Bowyer's expenditure of approximately $7,000 in non-exempt funds on improvements to his home in July or August.[1]
 
 
 3
 On reconsideration, we conclude that the record adequately supports the bankruptcy court's finding that Dr. Bowyer did not decide to file a bankruptcy petition until October 1987. One undisputed piece of evidence strongly supports this finding. In June and July 1987, Dr. Bowyer and his wife withdrew $25,000 from their savings and paid this sum to NCNB as advance, unscheduled payments on their note. We agree with the bankruptcy court that the Bowyer's $25,000 advance payments on their note in July is completely incompatible with an intent to default on the note and file a bankruptcy petition. We conclude therefore that the district court's finding that Bowyer did not intend to file a bankruptcy petition until October 1987 is not clearly erroneous. It follows that the district court did not err in concluding that Bowyer's sale of his gold Mapleleafs and the use of savings to repair his residence were not transfers made to defraud, hinder or delay creditors.
 
 II.
 
 4
 The only other transaction relied upon by NCNB to support its argument that Dr. Bowyer is not entitled to discharge was Bowyer's conversion of non-exempt funds to enhance his equity in his exempt residence. As stated in our original opinion, Bowyer's wife withdrew $24,000 from savings and paid it on their homestead mortgage approximately fifteen days before the bankruptcy petition was filed on October 28, 1987. The bankruptcy court and the district court correctly concluded that this transaction will not defeat Bowyer's discharge.
 
 
 5
 Collier on Bankruptcy states the well-settled rule that: "Under the former Act, the mere conversion of non-exempt property into exempt property on the eve of a bankruptcy was not of itself such fraud as will deprive the bankrupt of his right to exemptions." 3 Collier on Bankruptcy Sec. 522.08 (15th ed. 1991). Before the Bankruptcy Code was adopted in 1978, strong arguments were made to change that rule so that property obtained in last minute conversions would be ineligible for exemption. Both the House and Senate Reports rejected those arguments:
 
 
 6
 As under current law, the debtor will be permitted to convert non-exempt property into exempt property before filing a bankruptcy petition. The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled under the law.
 
 
 7
 H.R.Rep. No. 595, 95th Cong., 1st Sess. 361 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6317 (citation omitted); S.Rep. No. 989, 95th Cong., 2d Sess. 76 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5862; see Matter of Reed, 700 F.2d 986, 990 (5th Cir.1983).
 
 
 8
 Of course, conversion of non-exempt assets into exempt assets may be relevant where other evidence proves actual intent to defraud creditors. See Reed, 700 F.2d at 991. But in Reed, the debtor's conduct was much more egregious than the conduct of Bowyer in this case.[2] Also, the district court in Reed found as a matter of fact that the debtor intended to defraud his creditors. Critically, the factfinder in today's case found no such fraudulent intent.
 
 
 9
 The NCNB Bank made no specific argument to the bankruptcy court or the district court that Dr. Bowyer's transfers, while not fraudulent, were made with the intent to hinder or delay creditors. It is doubtful therefore that the bankruptcy court was placed on notice that a specific finding was necessary on the debtor's non-fraudulent intent to hinder or delay creditors. Even if we interpret the bank's pleadings as raising this issue, the district court's findings are sufficient to make it unnecessary to remand for additional findings on this point. The factual findings of the district court fully support its legal conclusion that Bowyer's $24,000 payment from non-exempt savings on his exempt homestead was legitimate pre-bankruptcy planning. Thus, that transaction cannot support a finding of intent to delay or hinder creditors.
 
 
 10
 We have carefully considered the additional arguments NCNB raised in its appeal which we did not reach in our earlier opinion.[3] For the reasons assigned by the bankruptcy court in its August 12, 1988 findings of fact and conclusions of law, we conclude that it correctly resolved these issues.
 
 
 11
 For the reasons stated above, Bowyer's application for rehearing is GRANTED and the judgment of the district court is AFFIRMED.
 
 BARKSDALE, Circuit Judge, dissenting:
 
 12
 I respectfully dissent. Our original opinion, 916 F.2d 1056, correctly applied 11 U.S.C. Sec. 727(a)(2)(A); we held that the bankruptcy and district courts erred by not holding that the conversion of non-exempt to exempt property was undertaken with the intent to hinder or delay a creditor.
 
 
 13
 Section 727(a)(2)(A) prohibits, under certain conditions, an action taken with "intent to hinder, delay, or defraud a creditor...." (Emphasis added.) As addressed in our original opinion, "the term 'defraud' does not subsume 'hinder or delay.' " 916 F.2d at 1059. And, at each stage of these proceedings, the Bank has contended that the conversion was, among other things, made with intent to hinder or to delay. As held in our previous opinion, the error arose out of focusing on intent to defraud, and failing to address separately intent to hinder or intent to delay.
 
 
 14
 By granting rehearing and affirming the judgment of the district court, the majority, I respectfully submit, continues this error.
 
 
 
 [1]
 Dr. Bowyer spent most of this sum to install central heating and air conditioning in his home, hardly an extraordinary expense for one residing in Austin, Texas
 
 
 [2]
 The Reed court summarizes Reed's conduct as follows:
 His rapid conversion of nonexempt assets to extinguish one home mortgage and to reduce another four months before bankruptcy, after arranging with his creditors to be free of payment obligations until the following year, speaks for itself as a transfer of property in fraud of creditors. His diversion of the daily receipts of Reed's Mens Wear into an account unknown to his creditors and management consultant and his subsequent use of the receipts to repay a loan that had been a vehicle for this conversion confirm his fraudulent motivation.
 700 F.2d at 991-92.
 
 
 [3]
 The Bank contends that Bowyer: fraudulently or knowingly made a false oath or account, under 11 U.S.C. Sec. 727(a)(4); did not satisfactorily explain the dissipation of assets, under 11 U.S.C. Sec. 727(a)(5); made a false statement in writing, under 11 U.S.C. Sec. 523(a)(2)(B); and obtained refinancing by actual fraud or misrepresentation, under 11 U.S.C. Sec. 523(a)(2)(A)