In re **L.R. HOLLENBECK, D.D.S.** and **Virginia Hollenbeck, Debtors.**

**L.R. HOLLENBECK, D.D.S.** and **Virginia Hollenbeck, Plaintiffs,**

v.

**UNITED STATES INTERNAL REVENUE SERVICE, Defendant.**

**Bankruptcy No. 90–05325–H3–7. Adv. No. 92–4686.**

United States Bankruptcy Court, S.D. Texas, Houston Division.

Sept. 30, 1993.

C. LeRoy Melcher, Brown, McCarroll & Oaks Hartline, Houston, TX, for debtor.

David Eugene Whitcomb, Dist. Counsel–IRS, Houston, TX, for I.R.S.

### MEMORANDUM OPINION

LETITIA Z. CLARK, Bankruptcy Judge.

The court has considered the Debtor's Complaint to Determine Dischargeability of Taxes, the pleadings, evidence, arguments, and briefs filed in this case, and makes the following Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052. Pursuant to Bankruptcy Rule 9021, a separate Judgment conforming to these Findings of Fact and Conclusions of Law will be entered. To the extent any of the Findings of Fact herein are construed to be Conclusions of Law, they are hereby adopted as such. To the extent any of the Conclusions of Law herein are construed to be Findings of Fact, they are hereby adopted as such.

### Findings of Fact

1. Dr. L.R. Hollenbeck and Virginia Hollenbeck ("Debtors") commenced their Chapter 7 case by filing a voluntary petition on August 3, 1990. A discharge was entered in the Chapter 7 case on December 3, 1990.

2. On January 18, 1989, Debtors filed an amended tax return for 1982 (Exhibit 1).

The amended return reflects that Debtors were no longer seeking deductions based on three partnerships, two of which, Dark Star and Fire Mountain, were partnerships to which the uniform accounting provisions of the Tax Equity and Fiscal Responsibility Act ("TEFRA") apply.

3. On February 9, 1989, the United States Internal Revenue Service ("IRS") issued a notice of proposed deficiency to Debtors of $18,985.30 for 1982, disallowing deductions for the non-TEFRA partnership, Benson Equipment Associates (Exhibit 2). Debtors objected to the notice by letter dated March 21, 1989, and threatened suit.

4. In response to the Debtors' letter objecting to the proposed deficiency, Brian Haley, an assistant chief for IRS, proposed a settlement by letter dated April 7, 1989.

5. With respect to the two TEFRA partnerships, Haley's letter states: "I can have the computations prepared for you, and have the deficiency amounts assessed at the same time as the statutory notice of deficiencies are processed" (Exhibit 3, at 3).

6. Debtors agreed to settle the tax claims, and IRS forwarded a letter dated April 25, 1989 to Debtors with amended tax returns prepared by IRS attached (Exhibits 4, 5). The tax returns were to be amended to reflect an amount due for the two TEFRA partnerships of $15,390.63.

7. The April 25, 1989 letter provides: "To allow contemporaneous assessment of the amended returns with the assessment of the Statutory Notice of Deficiencies, you are to submit the executed Forms 1040X to me (as opposed to the Service Center), together with executed Requests for Administrative Adjustment."

8. Debtors returned the signed amended tax returns with a cover letter dated May 18, 1989 (Exhibit 6), which was received by IRS on May 22, 1989 (Exhibit 7).

9. IRS assessed Debtors $15,452.67 for the non-TEFRA partnership adjustment on June 6, 1989.

10. Over one year later, on June 22, 1990, IRS issued a notice of deficiency for the TEFRA partnerships, and assessed Debtors in the amount of $15,102.90 for the TEFRA partnerships on July 2, 1990 (Exhibit 11). IRS never processed the amended returns submitted to Haley by the Debtors.

11. The taxes for the TEFRA partnerships were assessed by IRS within 240 days before the filing of the petition. Debtors seek a determination that IRS is estopped from asserting assessment of the taxes within 240 days before the petition was filed as an exception to discharge after representing that the taxes would be immediately assessed in April, 1989.

12. The Debtors were represented in their negotiations with the IRS by David C. Holland, a lawyer specializing in the area of taxation. Holland was called as a witness at trial by the Debtors. Holland testified that he had had several phone conversations with Haley.

13. Holland testified that ordinarily, tax returns are processed when filed. He further testified that, after he submitted amended returns to remove the deductions for the partnerships, Haley interrupted the processing of Debtors' amended returns to contact Holland, requesting that the Debtors take the actions eventually taken. Holland stated that Haley sounded like he had authority to assess the taxes for the TEFRA and non-TEFRA partnerships at the same time. The court finds Holland to be a credible witness.

14. Holland testified that Dr. Hollenbeck's physical well being had diminished noticeably since the time Holland had represented Dr. Hollenbeck. Dr. Hollenbeck testified that his physical condition worsened as a result of the IRS' conduct. He was active and athletic prior to IRS' involvement in his case, and developed an ulcer during the period of negotiations with IRS. The ulcer has required Dr. Hollenbeck to have a prosthetic valve installed in his stomach. The court finds Holland and Dr. Hollenbeck to be credible witnesses.

15. Dr. Hollenbeck testified that the Debtors made their choice of the date on which to file their Chapter 7 petition by determining when 240 days had passed after the June 6, 1989 assessment, then waiting an additional six months. No allegation of bad

faith in either the filing or the timing of Debtors' petition has been made.

16. Dr. Hollenbeck testified that during the time the Debtors were waiting to file their petition, IRS foreclosed, attached, and sold Debtors' homestead, and threatened to seize the equipment he used in his dental practice.

### Conclusions of Law

1. The court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157, 1334.

2. Income tax debts assessed within 240 days before the date of filing of a bankruptcy petition are ordinarily excepted from discharge. 11 U.S.C. §§ 523(a)(1)(A), 507(a)(7). Exceptions to discharge must be proven by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

3. The power of the IRS to collect taxes is grounded in Article I, Section 8 of the Constitution: "The Congress shall have the Power to lay and collect Taxes....," as well as the Sixteenth Amendment: "The Congress shall have the power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration."

4. Congress has entrusted the Department of the Treasury and derivatively the IRS with broad power to enforce our revenue laws. 26 U.S.C. § 1, et seq.; *IRS v. Blais*, 612 F.Supp. 700, 703 (D.Mass.1985). The power to collect, however, is not an unrestricted power. The government must abide by the laws of the United States, including constitutional, statutory, and decisional constraints against unequal treatment. *IRS v. Blais*, 612 F.Supp., at 703–704.

5. Congress has delegated to the Commissioner of Internal Revenue the power to promulgate "all needful rules and regulations for the enforcement of [the Internal Revenue Code]." *Cottage Savings Ass'n v. Commissioner*, 499 U.S. 554, 111 S.Ct. 1503, 113 L.Ed.2d 589 (1991); *See also* 26 U.S.C. § 7805(a).

6. Treasury Regulations are generally viewed with a great degree of deference, and are valid if they implement the congressional mandate in some reasonable manner. *Commissioner v. Portland Cement Co.*, 450 U.S. 156, 101 S.Ct. 1037, 67 L.Ed.2d 140 (1981); *McDonald v. Commissioner*, 764 F.2d 322 (5th Cir.1985). A regulation is presumed to be valid unless it can be demonstrated that the regulation is unreasonable and plainly inconsistent with the statute. *Zemurray Foundation v. United States*, 687 F.2d 97 (5th Cir.1982), *citing Commissioner v. Portland Cement Co.*, 450 U.S. 156, 101 S.Ct. 1037, 67 L.Ed.2d 140 (1981).

7. By contrast, IRS's interpretive rulings have the force and effect of law only if they prescribe substantive rules, and the rules are promulgated pursuant to a specific statutory grant of authority. *Ward v. Commissioner*, 784 F.2d 1424 (9th Cir.1986); *Rank v. Nimmo*, 677 F.2d 692 (9th Cir.) *cert. den.*, 459 U.S. 907, 103 S.Ct. 210, 74 L.Ed.2d 168 (1982). Interpretive regulations are entitled to somewhat less judicial deference than a legislative regulation issued under a specific grant of authority in the Internal Revenue Code. *Brown v. United States*, 890 F.2d 1329, 1336 (5th Cir.1989).

8. It is against this backdrop that the court considers the question of estoppel. Estoppel is an equitable doctrine invoked to avoid injustice in particular cases. *Heckler v. Community Health Services*, 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984). When the government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined. It is for this reason that the government may not be estopped on the same terms as any other litigant. *Heckler*, 467 U.S., at 60, 104 S.Ct. at 2224.

9. A taxpayer with the burden of demonstrating a misrepresentation by an IRS agent must go beyond the elements of an ordinary estoppel to show an affirmative misrepresentation or affirmative concealment of a material fact by the government, though such a showing does not require governmen-

tal intent to mislead. *Watkins v. U.S. Army,* 875 F.2d 699, 707 (9th Cir.1989).

■ 10. In order to prevail on an estoppel claim against IRS, a taxpayer must show: 1) a misrepresentation by an agent of the United States acting within the apparent scope of his duties; 2) absence of contrary knowledge by the taxpayer; 3) reliance by the taxpayer; 4) detriment to the taxpayer; and 5) facts such that absence of equitable relief would be unconscionable. *Tonkonogy v. United States,* 417 F.Supp. 78 (S.D.N.Y. 1976); *United States v. Asmar,* 827 F.2d 907, 911 (3rd Cir.1987).

11. A number of courts have recognized facts giving rise to an estoppel against the government in tax cases. *Simmons v. United States,* 308 F.2d 938 (5th Cir.1962); *In re King,* 96 B.R. 356 (Bankr.M.D.Fla.1989); *Matter of La Difference Rest.,* 63 B.R. 819 (S.D.N.Y.1986); *Tonkonogy,* supra; *Asmar,* supra.

12. In the *La Difference* case, IRS was held equitably estopped to collect an additional tax after it stipulated to the amount of a tax claim in writing for the purposes of confirming a plan under the Bankruptcy Act. *Matter of La Difference Rest.,* 29 B.R. 178, 182–183 (Bankr.S.D.N.Y.1983) *aff'd,* 63 B.R. 819 (S.D.N.Y.1986).

13. TEFRA adjustments are made for each partner at the partnership level, based on the TEFRA statute. 26 U.S.C. § 6225, et seq. Assessments can only be made after 150 days after the day on which a notice of a final partnership administrative adjustment was mailed to the tax matters partner. 26 U.S.C. § 6225(a)(1). There is an exception to this requirement where an individual partner makes an administrative adjustment request within three years after the later of the date on which the partnership return for such year is filed, or the last day for filing the partnership return for such year (determined without regard to extensions), and be-

fore the mailing to the tax matters partner of a notice of final partnership administrative adjustment with respect to such taxable year. 26 U.S.C. § 6227.

■ 14. It is clear that Haley affirmatively misrepresented in his April 7, 1989 and April 25, 1989 letters that he would have the TEFRA and non-TEFRA adjustments assessed together.

15. The court concludes that Haley was acting within the apparent scope of his authority in offering to have adjustments assessed contemporaneously. Thus the first prong of the *Tonkonogy* test is satisfied.

16. In *Gehl Co. v. Commissioner,* 795 F.2d 1324 (7th Cir.1986), Gehl Company ("Gehl") relied on statements in a Treasury Pamphlet to its detriment. The pamphlet contained a statement by IRS that it would follow the rules outlined in the pamphlet until they were modified by regulations or Treasury publications, and that any such modifications would apply prospectively only. The Seventh Circuit held that it was an abuse of discretion to apply the subsequent regulation to Gehl retroactively, stating "To allow the Treasury to renege on such express promises with impunity is grossly unfair." *Gehl Co.,* 795 F.2d, at 1333.[1]

17. The court concludes that the Debtors did everything within their power, acting with the advice of counsel, to get their tax adjustments assessed over 240 days prior to their filing of the petition in this case. The language of Haley's letter, together with Holland's recollection of his discussions with Haley, lead the court to conclude that the Debtors did not have knowledge of the misrepresentation made by Haley.

18. Debtors could have delayed the filing of their petition had they known that the adjustments for the two TEFRA partnerships had not been made contemporaneously with the assessment of the adjustments for the non-TEFRA partnership. The Fifth Cir-

---

1. The court in *Gehl Co.* noted the general rule that taxpayers rely on informal Treasury publications at their own peril. *Gehl Co. v. Commissioner,* 795 F.2d 1324, 1333 (7th Cir.1986), *citing Caterpillar Tractor Co. v. United States,* 589 F.2d 1040 (Ct.Cl.1978); *Carpenter v. United States,* 495 F.2d 175 (5th Cir.1974). However, the Seventh

Circuit distinguished the case before it from the general rule on the basis that the promise of proactive effect contained in the pamphlet was an express promise which not only reasonably induced reliance, but was originally made specifically to create such reliance.

cuit has recognized that there is a legitimate role for pre-bankruptcy planning. *See e.g. Matter of Bowyer,* 932 F.2d 1100, 1103 (5th Cir.1991).

19. Dr. Hollenbeck's testimony and that of Holland to the effect that Debtors intended to file their petition after 240 days after assessment of the taxes for the TEFRA and non-TEFRA partnerships, along with Debtors' actual filing at a time when they believed the taxes had been assessed, supports the conclusion that the Debtors relied on the statements of Haley to their detriment.

20. Finally, the court reaches the fifth prong of the *Tonkonogy* rationale. On the facts of this case, it is unconscionable to except from discharge the debt claimed by IRS, due to the affirmative misrepresentation of its agent. Haley's letter induced the Debtors to file amended returns prepared by the IRS, which they did. IRS then did not process the amended returns, and did not assess the taxes for the TEFRA partnerships until over one year after Haley represented that the taxes would be assessed. The court concludes that the course of action by IRS resulted in gross unfairness, as in *Gehl Co.,* supra.

21. IRS has asserted that Haley did not have the authority to assess the Debtors for the TEFRA partnerships contemporaneously with the non-TEFRA partnerships, and thus that his actions as a matter of law cannot be grounds for estoppel against the government, citing in support of this proposition the Supreme Court's opinion in *Office of Personnel Management v. Richmond,* 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990). This case is distinguished from *Richmond* in that the relief sought by the Debtors here is a judgment estopping the government from collecting the taxes assessed within 240 days of the petition. In *Richmond,* the Court of Appeals for the Federal Circuit held that the government was estopped from denying benefits to a retired employee based on the erroneous advice of the government's employee relations specialist. The Supreme Court reversed, on the basis that a claim for the payment of money from the Treasury must be authorized by statute. *Richmond,* 496 U.S. at 423, 110 S.Ct., at 2471. In the

instant case, Debtors do not seek a payment from the Federal Treasury.

22. The court concludes that the Debtors in this case are entitled to judgment against the IRS equitably estopping IRS from collecting the taxes assessed in the amount of $15,102.90 for the TEFRA partnerships on July 2, 1990.

Based on the foregoing, a separate conforming Judgment will be entered.

### JUDGMENT

Based on the separate Memorandum Opinion signed this same date, it is

ORDERED that the United States Internal Revenue Service is equitably estopped from collecting taxes assessed in the amount of $15,102.90 on July 2, 1990.