**In re Edlee Taft LILLY and Louella Lee Lilly, Debtors.**

**Edlee Taft LILLY and Louella Lee Lilly, Plaintiffs,**

v.

**UNITED STATES of America, Internal Revenue Service, Defendants.**

**Bankruptcy No. 90–00818.**
**Adv. No. 95–6215.**

United States Bankruptcy Court,
D. Idaho.

April 9, 1996.

---

D. Blair Clark, Ringert Clark Chartered, Boise, Idaho, for plaintiffs.

Richard R. Ward, Trial Attorney, Tax Division, Department of Justice, Washington, DC, for Defendants.

## MEMORANDUM OF DECISION

ALFRED C. HAGAN, Bankruptcy Judge.

In this adversary proceeding, the parties, Edlee Taft Lilly and Louella Lee Lilly (the "Debtors"), and the Internal Revenue Service of the United States (the "Service") have filed cross-motions for summary judgment.

### FACTUAL BACKGROUND

The Service conducted an audit of the Debtors' income tax return for 1981. The Debtors appealed the Service's audit determination to the Service's Office of Appeals. The Debtors were represented in the appeal by Michael Emert. Mr. Lilly participated in the audit process in person. Mrs. Lilly did not attend the hearings and conferences. Instead, she gave Mr. Emert a power of attorney to act on her behalf.

On July 24, 1986, Mr. Emert signed, on behalf of the Debtors, an IRS Form 872–A Special Consent to Extend the Time to Assess Tax. The 872–A form states that "if a notice of deficiency is sent to the taxpayer(s), the time for assessing the tax for the period(s) stated in the notice of deficiency will

end 60 days after the period during which the making of an assessment was prohibited."

The Service and the Debtors reached an agreement as to the amount of taxes due in December of 1988. Mr. Emert testified that on December 19, 1988, he mailed an unsigned IRS Form 870–AD Offer of Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and of Acceptance of Overassessment to the Debtors. Neither of the Debtors remembers receiving or signing the 870–AD form sent by Emert.

Mr. Lilly does, however, remember signing an earlier 870–AD in Mr. Hal Palley's office. Mr. Palley is one of the Service's audit staff who worked on the Debtors' 1981 audit. Neither the Service nor the Debtors have been able to locate a copy of the executed 870–AD. Mr. Emert and Mr. Lilly considered this 870–AD a binding agreement.

The Debtors contend they executed a second 870–AD form due to a mathematical error in the first form. This 870–AD form has not been located either.

On March 27, 1989, the Service issued a notice of deficiency to the Debtors. Mr. Emert retained in his files both the notice of deficiency sent to the Debtors and the copy which was sent to him as the Debtors' accountant.

On August 7, 1989, the Service formally made assessments for tax penalty and interest against the Debtors for the tax year 1981 in the following amounts:

| | |
|---|---|
| Tax: | $10,602.00 |
| Penalty | $21,499.00 |
| Interest | $29,537.33 |

On March 16, 1990, the Debtors filed a voluntary petition for relief under Chapter 7 of Title 11 of the United State Code. The tax penalty assessed for the 1981 tax year was discharged in the bankruptcy. The Debtors filed this action seeking a declaratory judgment that the 1981 taxes assessed and the interest thereon were also discharged in the bankruptcy.

### DISCUSSION

Taxes of the kind specified in § 507(a)(7)[1] are not discharged in a chapter 7 bankruptcy. 11 U.S.C. § 523(a)(1)(A). Code § 507(a)(7)(A)(ii) provides:

(A) a tax on or measured by income or gross receipts—

....; [or]

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition.

11 U.S.C. § 507(a)(7)(A)(ii).

The Service formally assessed the 1981 taxes at issue within the 240 day period. However, the Debtors contend the taxes should be considered "assessed" for purposes of § 507(a)(7)(A)(ii) as of the date they signed the 870–AD form in December of 1988.

The vast majority of those cases considering the issue have held that a tax is "assessed" for purposes of § 507(a)(7)(A)(ii) when the Service enters the assessment pursuant to 26 U.S.C. § 6203. *See In re Hartman,* 110 B.R. 951, 956 (D.Kan.1990); *In re Oldfield,* 121 B.R. 249, 252–253 (Bankr. E.D.Ark.1990); *In re Shotwell,* 120 B.R. 163, 164 (Bankr.D.Or.1990); *In re Carter,* 74 B.R. 613, 617 (Bankr.E.D.Pa.1987); *In re Kostoglou,* 74 B.R. 202, 203 (Bankr.N.D.Ohio 1987).

The *In re Hartman,* decision best states the reason for this rule:

As worded, § 507(a)(7)(A)(ii) does not preclude applying the definition of "assessment" found in the Internal Revenue Code when a federal tax deficiency is involved. This ostensibly "technical" definition provides a readily determinable date of assessment. Courts have assumed, with little dispute, that the assessment date under

---

1. With the passage of the 1994 Bankruptcy Reform Act (the "BRA"), Congress renumbered but did not amend § 507(a)(7)(A)(ii) as § 507(a)(8)(A)(ii). However, because the BRA only applies to cases filed after October 22, 1993, and all of the relevant case law refers to § 507(a)(A)(ii) (West Supp.1994) all references in this memorandum shall be to the pre-BRA Code unless otherwise noted.

the Internal Revenue Code is the same assessment date under the Bankruptcy Code provision, § 507(a)(7)(A)(ii). [citations omitted]. Even though the term may appear in the Bankruptcy Code, it is specifically used in reference to taxes and its meaning must be a function of that context. Recognizing the difficulty of defining "assessment" so as to encompass all possible tax procedures of federal, state, and local governmental units, Congress employed a common term of tax lexicon and left its peculiar meaning to depend upon the particular tax procedures.

*In re Hartman,* 110 B.R. at 956.

I agree with the court's analysis in *In re Hartman.* Accordingly, I conclude the taxes were assessed within the 120 day period proceeding the filing of the Debtors' chapter 7 petition.

 In the alternative, the Debtors contend the Service should not be allowed to delay assessment without justification. However, the plan language of § 507(a)(7)(A)(ii) does not make any exception for "unjustified" delay on the part on the Service. Nor is the Service's ability to delay assessment unlimited. The Service may not assess taxes after the statute of limitations set forth in 26 U.S.C. § 6501 has run. Accordingly, I see no reason to prohibit the Service from relying on timely assessments regardless of whether the Service could have assessed the taxes earlier. *See In re Hays,* 166 B.R. 946 (Bankr.D.N.M.1994) (where debtors' 1984 taxes were not assessed until July 1, 1991, the Service was not required under § 507(a)(7)(A)(ii) to date assessment back to the date the debtors' 1988 return was filed).

But, a case exists in which the Service was precluded from using the actual date of assessment under 26 U.S.C. § 6503 for determining priority or dischargeability under § 507(a)(7)(A)(ii): *In re Hollenbeck,* 166 B.R. 291 (Bankr.S.D.Tex.1993). In *Hollenbeck,* the Service affirmatively promised the debtors not only that it would assess a particular amount of taxes, but also that it would assess the tax at a particular time. Under those circumstances, the court held the Service was estopped from claiming the assessment took place at any time other than the date on which the Service promised to assess the taxes.

Although the Service and the Debtors dispute the facts surrounding the execution and delivery of the IRS Form 870–AD, the determination of the facts surrounding this controversy do not create a genuine issue of material fact under the *Hollenbeck* court's analysis. There is no evidence in this case that the Service affirmatively represented, or even implied, that it would assess the 1981 taxes on any particular date. Accordingly, I conclude that the 1981 taxes and the interest thereon were not discharged in the Debtors' chapter 7.

The remaining facts are not in dispute. Therefore summary judgment is appropriate.

### CONCLUSION

The Debtors' motion for summary judgment will be denied and the Service's motion for summary judgment will be granted. Counsel for the Service may prepare an appropriate order for signature.